**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| MIRANDA NEVELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-142-JAR |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying the application of Miranda Nevels ("Nevels") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons stated herein, the Court affirms the Social Security Administration's denial of Nevels's claim for DIB.

**I.     Background**

On August 30, 2019, Nevels applied for DIB. (Tr. 808-09). On April 15, 2020, Defendant issued a Notice of Disapproved Claims. (Tr. 733-37). On June 22, 2020, Nevels filed a Request for Reconsideration. (Tr. 738). On July 10, 2020, Defendant affirmed its previous decision, denying Nevels's claims. (Tr. 739-43). Nevels filed a Request for a hearing by an Administrative Law Judge ("ALJ"), and a telephone hearing was held on January 11, 2021. On March 23, 2021, the ALJ issued a decision, finding Nevels was not disabled. (Tr. 340-60). The ALJ determined that Nevels had the following severe impairments: patellofemoral syndrome of right knee, obesity, bipolar II disorder, general anxiety disorder, and posttraumatic stress disorder ("PTSD"). (Tr.

343).  The ALJ found that Nevels did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  (Tr. 343-45).  The ALJ found that Nevels retained the residual functional capacity to:

> perform light work as defined in 20 CFR 404.1567(b) except lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently.  She can stand walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks.  She can frequently climb ramps or stairs, but occasionally climb ladders, ropes or scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl.  She should avoid exposure to extreme cold.  She should avoid concentrated exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated area.  She should avoid concentrated exposure to operational control of moving machinery, unprotected heights and hazardous machinery.  Her work is limited to simple and routine tasks.  Her work should be in low stress jobs, defined as having only occasional changes in the work setting.  Her work should not be in a fast[-]paced type of job.  She should have no interaction with the public.  She should have only occasional interaction with co-workers and supervisors.

(Tr. 345).  At step four, the ALJ found Nevels was unable to perform her past relevant work.  (Tr. 358).  At step 5, the ALJ found there are jobs that exist in significant numbers in the national economy that Nevels could perform.  (Tr. 359).

Thereafter, Nevels requested the Appeals Council of the Social Security Administration review the ALJ's decision dated March 23, 2021.  In conjunction with her appeal, Nevels submitted new, additional medical records from Thomas F. Ganz, M.D. and Mercy Hospital.  (Tr. 2).  The Appeals Council found that this evidence did not show a reasonable probability that it would change the outcome of the decision.  (*Id.*) The Appeals Council denied Nevels request for review of the ALJ's decision on December 7, 2021. (Tr. 1-4).  The decision of the ALJ thus stands as the final decision of the Commissioner.  *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Nevels filed this appeal on February 7, 2022. (ECF No. 1). On August 29, 2022, Nevels filed a Brief in Support of her Complaint. (ECF No. 16). The Commissioner filed a Brief in Support of the Answer on September 15, 2022. (ECF No. 17).

As to Nevels's testimony, work history, and medical records, the Court accepts the facts as provided by the parties.

**II.     Legal Standard**

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet

or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

#### A. RFC Supported by Substantial Evidence

Nevels argues that the ALJ's decision, particularly the RFC, is not supported by substantial evidence. Nevels contends that the ALJ's determination "contains no physical RFC and two mental RFCs that were provided at the initial level by State agency physicians." (ECF No. 16 at 4). Nevels contends that "[b]ecause there is no RFC or opinion from an appropriate medical source who was able to review the entire record, which consists of over a [years'] worth of additional treatment notes, and the ALJ made it clear that the additional evidence provided after the opinions in the file supported greater limitations tha[n] found by those doctors, it seems that the RFC is the ALJ's own interpretation of the evidence of the record, which is not allowed. The ALJ is not qualified to . . . determine [the] RFC, as a layperson, and exceeded his authority in translating raw medical evidence into an RFC." (ECF No. 16 at 5). Nevels argues that the ALJ "may need to further develop the file by getting an RFC assessment from the treating source or a CE." (ECF No. 16 at 5).

The Court finds that the RFC is supported by substantial evidence. "The key issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole." *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006) (citing *Sultan v. Barnhart,* 368 F.3d 857, 862 (8th Cir. 2004)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citing *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). In determining whether evidence is substantial, this Court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Travis*, 477 F.3d at 1040 (citing *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000)). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.*

Contrary to Nevels's argument, "the ALJ is not required to have a medical opinion to assess the claimant's RFC." *Winship v. Saul*, No. 4:20-CV-00039-MDH, 2021 WL 1055196, at *3 (W.D. Mo. Mar. 19, 2021); *see Masciovecchio v. Berryhill*, 4:16-CV-01048-DGK, 2017 WL 3741011, at *4 (W.D. Mo. Aug. 30, 2017) ("This argument is based on the faulty assumption that an ALJ must have a medical opinion to assess the claimant's RFC, and that absent a medical opinion any RFC determination is invalid. If accepted, this argument would shift the burden of proving RFC from the claimant to the Commissioner. But it is the claimant's burden to prove his RFC.") (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Martsolf v. Colvin*, No. 6:16-00348-NKL, 2017 WL 77424, at *7 (W.D. Mo. Jan. 9, 2017) ("There is no requirement that an RFC be supported by a specific medical opinion.") (citing *Meyers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) and *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012)).  Rather, the Court notes that the ALJ evaluated the medical and nonmedical evidence, properly formulating an RFC that

accommodated Nevels's limitations.  The ALJ limited Nevels to light exertional work, with limits related to walking, climbing, balancing, stooping, kneeling, crouching, crawling, operational control of moving machinery, unprotected heights, and hazardous machinery.  These limitations corresponded to Plaintiff's severe impairments: right knee condition, obesity, and dizziness from migraines.  (Tr. 345).  The ALJ limited Nevels to lifting no more than 20 pounds occasionally based upon Nevels's testimony that she could lift 30 pounds.  (Tr. 345, 661).  Similarly, the ALJ precluded Nevels from exposure to extreme cold based upon her testimony that cold caused her pain.  (Tr. 345, 673).  The ALJ limited her exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas because of her shortness of breath.  (Tr. 350).

As to her mental health, Nevels testified that her anxiety manifested in racing thoughts, task avoidance, and self-isolation.  (Tr. 667).  She testified that stress caused her anxiety and she had panic attacks two to five times monthly, which lasted 30 minutes to an hour.  (Tr. 667-68).  The ALJ accounted for Nevels's mental health limitations, restricting her to simple and routine tasks in a low stress job with only occasional changes in the work setting, not fast-paced, and not involving any interaction with the public and only occasional interaction with co-workers and supervisors.  (Tr. 345).

As to step three of the analysis, the Court finds that the ALJ adequately explained the RFC assessment.  The ALJ discussed the evidence reflecting Nevels's moderate limitations with understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing herself.  (Tr. 344).  The ALJ pointed out that Nevels could prepare meals, pay bills, attend appointments, shop, drive, play games provide health information and work history, follow instructions by healthcare providers, socialize, and care for children.  (Tr. 344).  The stated moderate limitations in conjunction with Nevels's

6

ability to function were consistent with the ALJ's RFC determination that Nevels could perform simple and routine tasks.

In sum, the Court holds that the ALJ's RFC determination is supported "by substantial evidence on the record as a whole." *Buford v. Colvin*, 824 F.3d 793, 795 (8th Cir. 2016) (citing *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011); *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)). The Court finds the record supports the ALJ's physical and mental RFC findings and affirms the ALJ's decision. *See Winship v. Saul*, No. 4:20-CV-00039-MDH, 2021 WL 1055196, at *3 (W.D. Mo. Mar. 19, 2021) ("ALJs are instead tasked with reviewing and considering the record taken as a whole, resolving any inconsistencies, and formulating an RFC finding that reflects Plaintiff's functional abilities.").

### B. Medical Opinion Evidence

Nevels argues that the ALJ's decision does not properly consider the medical opinions' supportability and consistency. (ECF No. 16 at 6). When Nevels initially filed her claim for benefits, she submitted opinions from State agency physicians: Dr. Trowbridge, dated April 15, 2020, concluding that Nevels had no severe physical medical determinable impairments. (Tr. 708). At reconsideration, Nevels provided the opinion of Dr. Donna McCall, dated July 10, 2020, which affirmed the assessment by Dr. Trowbridge. (Tr. 722). Nevels argues that the opinions of Dr. McCall and Dr. Trowbridge "lack any kind of supporting explanation as they both found that plaintiff's conditions of migraine headaches, obesity and asthma were non severe." (ECF No. 16 at 7 (citing Tr. 723)). After considering these opinions, the ALJ found neither to be persuasive due to the additional medical evidence received, reflecting a severe physical impairment. (Tr. 357). Hence, Nevels argues "the decision is not supported by substantial evidence and requires reversal and remand for further consideration of the medical opinions in evidence." (ECF No. 16 at 8)

7

In an April 13, 2020 opinion, Dr. Skolnick found Nevels was capable of concentrating and persisting in simple 1-2 step tasks, required limited social contact to reduce her anxiety, could adapt to predictable and gradual changes, and preferably involved little independent goal setting and planning. (ECF No. 16 at 7 (citing Tr. 712-23)). In a July 10, 2020 report, Dr. Cottone reiterated Dr. Skolnick's assessment, stating Nevels was capable of simple work without public interaction. (*Id*. (citing Tr. 725)).

The ALJ's decision found the opinions of Dr. Skolnick and Dr. Cottone to be "not persuasive" because additional medical records were received, showing Nevels has other mental limitations and because "limited social contact is vague." (Tr. 357). Nevels argues that the ALJ's construction of the mental RFC is "even less well explained [than the physical RFC] and there is no discussion of the supportability or consistency factors[.]" (ECF No. 16 at 8). Nevels maintains that the decision does not provide any details elucidating the RFC's restriction of Nevels's ability to perform simple, routine tasks in a low stress environment. (ECF No. 16 at 8). In sum, Nevels argues that the ALJ's decision does not properly evaluate the medical opinions because it did not properly consider supportability and consistency. (ECF No. 16 at 8).

Under the regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."20 C.F.R. § 404.1520c(a). Rather, when evaluating the persuasiveness of medical opinions and prior administrative medical findings, ALJs look at the supportability and consistency of those findings. (*Id*.) "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Where other evidence in the record provides a sufficient basis for an ALJ's decision,

8

then an ALJ "is permitted to issue a decision without obtaining additional medical evidence." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (internal quotation marks and citation omitted). Importantly, an ALJ's duty to develop the record is not never-ending. *McCoy*, 648 F.3d at 612.

Here, as noted by Nevels, the ALJ found the prior administrative medical findings regarding Nevels's mental functioning to be unpersuasive—primarily because they did not show other mental limitations--and the ALJ assessed additional functional limitations. (Tr. 357). The additional evidence discussed by the ALJ acknowledged treatment and medication management for impairments such as anxiety, depression, and panic attacks. (Tr. 351-55, 2285-2355). During those visits, Nevels was generally pleasant, cooperative, appropriately dressed with good hygiene, displayed good eye contact, clear speech, anxious to good mood, congruent affect, fair focus and concentration, linear thought process, fair insight and judgment, and no memory deficits. (Tr. 478-89, 493, 2288, 2293, 2304, 2546, 2552).

Nevels also submitted additional medical records to the Appeals Council, which found that the evidence did not "show a reasonable probability that it would change the outcome of the decision." (Tr. 2). The Appeals Council will review a case upon a party's request if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §404.970(a)(5). Here, however, none of the additional evidence required a different result by the ALJ. The records show generally normal physical examinations and mild lumbar spine osteoarthritis. (Tr. 59, 82, 84-85, 87). Again, Nevels was appropriately groomed and dressed, with good hygiene and eye contact, pleasant and cooperative, and without memory deficits. (Tr. 58-59, 65-66). Thus, the Court finds the ALJ and the Appeals

Council considered and evaluated the medical record, including those records received after the hearing.

In sum, the Court holds that the ALJ properly resolved the differences in the evidence and appropriately weighed the opinions in light of the record.  The Court cannot reverse the decision of the ALJ merely because the claimant discerned some evidence to support her position when the opposite position was supported by substantial evidence in the record.  *See Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 853 (E.D. Mo. 2004) (citing *Krogmeier v. Barnhart,* 294 F.3d 1019, 1022 (8th Cir. 2002) ("So long as substantial evidence supports that decision, the court may not reverse it merely because substantial evidence in opposition exists in the record or because the court would have decided the case differently.").

###     C.     Rationale of How Evidence Supports the Findings

Nevels argues that the ALJ erred in formulating the RFC because the ALJ failed to include a narrative discussion explaining how the medical and non-medical evidence supported each conclusion as required by Social Security Ruling (SSR) 96-8.  (ECF No. 16 at 8).  Nevels argues that the ALJ's decision fails to explain how the evidence supports the RFC and instead is indicative of the lack of evidence, demonstrating Nevels was not disabled.  (ECF No. 16 at  9-10).

The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. "A summary of the medical record does not fulfill the narrative discussion requirement." *Pierce v. Saul*, No. 4:19-CV-1886 ACL, 2020 WL 5642311, at *8 (E.D. Mo. Sep. 22, 2020). The ALJ, however, is not required to make explicit findings for every aspect of the RFC. *Id*. (citing *Depover v. Barnhart*, 349 F.3d 563,

10

567 (8th Cir. 2003)); *Murray v. Kijakazi*, No. 4:20-CV-484 PLC, 2022 WL 407140, at *4 (E.D. Mo. Feb. 9, 2022).

The ALJ summarized Nevels's medical records and concluded that she was not disabled. The ALJ found that Nevels's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. Specifically, her physical and mental examinations and treatments were not indicative of a disability. Nevels's physical examinations exhibited normal findings and no significant abnormalities. (Tr. 101-02, 546, 552-53, 1152-53, 1303, 1313, 1329, 1341, 1696, 1725, 755, 828, 1830, 1841-46, 2056-57, 2073-74, 2097, 2130-31, 2170, 2352-54, 2416, 2446, 2458-59, 2461, 2467-68, 2487-88, 2498). Similarly, as submitted to the Appeals Council, the medical records indicated that Nevels was doing well after her cystoscopy with hydrodistension for pelvic pain urinary urgency. (Tr. N21, 194, 201, 204, 214, 218, 223, 227, 239, 370). The records showed Nevels had normal joint range of motion, no back tenderness, intact neck range of motion, no extremity edema, no signs of muscle weakness or loss of tone or sensation, and a steady gait. (Tr. 17, 59, 87). An MRI showed the sacroiliac joins in normal alignment, joint spaces were preserved, no edema or sclerosis; only mild facet osteoarthritis on the left at L4-L5 presented. (Tr. 82, 84-85).

Likewise, Nevels's mental examinations were unremarkable, as previously discussed herein. (Tr. 478-89, 493, 2288, 2294, 2304, 2546, 2552). Although Nevels clearly has a mental illness diagnosis, her mental status does not present as disabled. Rather, any mental impairments were treated effectively with therapy and medication. In August 2020, Nevels reported feeling "good" with her medication, including improved sleep, better focus, and brighter moods. (Tr. 2291). Nevels's medications were reduced in October 2020, but she reported less irritability, no depressive or manic-like feature or angry outbursts as of December 2020. (Tr. 2302, 2550).

Indeed, it was only when her allergist recommended that Nevels stop the medication Doxepin that she noticed an increase in depression and anxiety. (Tr. 476). Thereafter, she resumed Doxepin. (*Id.*)

The ALJ further considered other evidence in the record to determine if Nevels's symptoms and impairments truly limited her ability to work. The ALJ reviewed Nevels's activities of daily living. (Tr. 344, 346, 356-57). Nevels worked at a reduced level in January 2020, but alleged disability beginning in November 2019. (Tr. 340, 657, 821, 867). Nevels provided childcare for her young child, drove, shopped, played games, did laundry, cleaned, ran errands, read, prepared meals, watched television, managed accounts, attended to medical appointment and her medical care. (Tr. 931-34, 939). These activities support the ALJ's findings as they are inconsistent with Nevels's claim of disability. The ALJ further considered Nevels's fiancé's statement, but found it not persuasive, given his lack of medical training and his biased position based upon their relationship. (Tr. 358, 910-17).

In sum, the Court finds that substantial evidence supports the ALJ's finding. "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Wiese v. Astrue,* 552 F.3d 728, 730 (8th Cir.2009); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). Here there was voluminous evidence documenting Nevels's symptoms and impairments, which supported the ALJ's decision that Nevels was not disabled. The ALJ's determination fell within the zone of choice, which this Court will not disturb. *See Winship*, 2021 WL 1055196, at *2 (citing *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007) ("Courts 'defer heavily to the findings and conclusions of the Social Security

Administration' and will disturb the Commissioner's decision only if it falls outside the 'zone of choice.'").

### D.  Migraines and Interstitial Cystitis

Nevels claims that the ALJ should have considered her migraines and interstitial cystitis as severe impairments.  (ECF No. 16 at 10-11).  Nevels alleged disabling migraines in her disability application.  (Tr. 704, 722).  She underwent a brain MRI in January 2021, with normal results, but she returned to the neurologist, Dr. Calvin, in April 2021 with complaints of headaches, blurred vision, slowed speech, dizziness, cognitive fog, and musical spasms.  (Tr. 553, 2563-64).  In August 2021, Dr. Calvin saw Nevels, who reported migraines 3-6 times per week and intermittent neck stiffness.  (Tr. 94).  Dr. Calvin diagnosed Nevels with migraines without aura, fibromyalgia, orthostatic hypotension and chronic pain.  (Tr. 102).

Nevels also complained that the ALJ should have considered her interstitial cystitis, which results in in pain, urinary incontinence, urgency and frequency.  (ECF No. 16 at 11 (citing Tr. 196, 201, 210, 370, 2238)).  Nevels received multiple bladder instillations to try to limit the severity of her symptoms.  (Tr. 194, 196, 198, 201, 204, 216, 223).  Nevels claimed that her interstitial cystitis and the installations treatment require her to "insert and hold a solution in her bladder for a minimum of 30 minutes significantly limits her ability to work and should have been evaluated and found to be severe impairments."  (ECF No. 16 at 12).

The ALJ, however, discussed these ailments and determined that there was no evidence that they were severe impairments.  *See* Tr. 354-55. Nevels has not identified evidence that migraine headaches or urinary incontinence resulting from interstitial cystitis made her unable to engage in substantial gainful activity for more than 12 months.  *See* 42 U.S.C. § 423(d)(1)(A)

(defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). As to Nevels's migraines, a brain MRI in January 2019, as well as an MRA, showed no abnormalities. Nevels met with a neurologist in December 2020 for headaches. Nevels reported speech, comprehension, and vision difficulties in early 2019, and subsequent episodes once every six months, with each lasting one to a few hours. (Tr. 2453). A neurological examination, as well as other examinations and imaging, were normal. (Tr. 1280, 1317, 1327, 1329, 2458-59, 2562-65). Thus, the Court holds that the ALJ's determination that Nevels's history of migraine headaches was not a severe impairment is supported by substantial evidence, considering that it only manifested every six months for a few hours at a time.

The Court also finds that the medical records Nevels submitted to the Appeals Council do not support a finding that her interstitial cystitis and urinary issues were a severe impairment. Nevels underwent a cystoscopy in January 2021, followed by four to six bladder installations. (Tr. 21, 194, 201, 204, 214, 218, 223, 227, 239, 370). At her appointment on July 6, 2021, Nevels reported improvement with weekly bladder instillations. (Tr. 201). Nevels reported voiding one or two times at night and three to four times during the day. (*Id.*) Given the efficacy of the instillations, Dr. Marcu prescribed home self-bladder instillations. (*Id.*) Thus, the Appeals Council's review of the evidence determined that the evidence either did not show a reasonable probability of changing the outcome of the decision or referred to a period after the ALJ's March 23, 2021. (Tr. 2). The Court holds that the record supports a finding that Nevels was not disabled due to interstitial cystitis, given the evidence of effective treatments and lack of disabling symptoms. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (quoting *Brown v. Barnhart*,

14

390 F.3d 535, 540 (8th Cir. 2004)("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling.'").

### IV.     Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**.  A separate Judgment will accompany this Order.

Dated this 14th day of March, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**